UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EVAN GEFFNER,

                  Plaintiff,

             -v-

QUANTA SERVICES, INC., et al.,

                  Defendants.

18-CV-3761 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Evan Geffner brings this action against Defendants Quanta Services, Inc., Phoenix Power Group, Inc., Tom Buchanan, Darrell Jenkins, John DeSena, Pete Butkowsky, Ashley Miller, and Earl C. Austin, Jr., alleging discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. (Dkt. No. 33 at 1–2, 14–24.) Defendants now move to dismiss Geffner's Amended Complaint in its entirety for improper venue, and to dismiss Geffner's claims against Defendant Earl C. Austin, Jr. for failure to state a claim. (Dkt. No. 46.) For the reasons that follow, the motion to dismiss for improper venue is denied, but the motion to dismiss the claims against Defendant Austin is granted.

**I.    Background**

    **A.    Factual Background**

      The following facts, which are presumed true for purposes of this motion, are drawn from Geffner's Amended Complaint. (Dkt. No. 33 ("AC").)

1

Defendant Phoenix Power Group, Inc. is a Delaware corporation with a principal place of business in Deer Park, New York. (AC ¶ 14.) Defendant Quanta Services, Inc. is a Delaware corporation.[1] (AC ¶ 13.) Phoenix Power Group, Inc. was acquired by Quanta Services, Inc. sometime in 2015. (AC ¶ 32.) Both Phoenix Power Group, Inc. and Quanta Services, Inc. (collectively, the "Corporate Defendants") conduct business in the state of New York. (AC ¶¶ 13–14.)

Plaintiff Evan Geffner is a resident of New Jersey. (AC ¶ 10.) Geffner worked under the Corporate Defendants' employ at all times relevant to this suit, namely from 2005 until his termination, effective May 1, 2017. (AC ¶¶ 12, 21, 56.) From 2005 through April 2016, Geffner worked for Defendants as an independent contractor; thereafter, he worked for Defendants as a full-time employee until the time of his termination. (AC ¶¶ 21, 35–36.) Geffner performed nearly all of his work for Defendants from his New York City office located in Manhattan. (AC ¶ 22.)

Defendants Tom Buchanan, Darrel Jenkins, John DeSena, Ashley Miller, Pete Butkowsky, and Earl C. Austin, Jr. each held various roles with the Corporate Defendants at all times material to this suit, and each is alleged to have held supervisory authority over Geffner. (AC ¶¶ 15–20.)

In or around February 2011, Geffner informed Defendant DeSena that Geffner was Jewish. (AC ¶ 23.) This sparked a stream of "off color" comments from DeSena targeting Geffner's religion. (*Id.*) These comments included descriptions of Geffner as cheap because of his religious status, jokes about the Holocaust, and statements that Geffner would not be

---

[1] The Amended Complaint does not provide Quanta Services, Inc.'s principal place of business. According to a declaration attached to Defendants' motion to dismiss, Quanta Services, Inc.'s principal place of business is Houston, Texas. (Dkt. No. 48-4 ¶ 3.)

2

welcome at company social outings because of his religion.  (*See, e.g.*, AC ¶¶ 25–28, 31, 42–43.)  DeSena's comments were made over an approximately five-year period spanning at least from June 2011 to May 2016.  (*See* AC ¶¶ 24, 43.)  Desena made the majority of these comments in the Corporate Defendants' Deer Park, New York office.  (*See, e.g.*, AC ¶¶ 25–31, 33.)  Geffner represents that despite having alerted his supervisors to DeSena's comments, no corrective action was taken.  (*See, e.g.*, AC ¶¶ 43, 52.)  Geffner also alleges that he was forced to work on Jewish holidays on at least 40 occasions during the course of his employment, despite his having requested time off to observe the holidays.  (AC ¶ 40.)  Geffner alleges that he made these requests for time off and that he performed 99% of the work demanded of him, including on Jewish holidays, from his office in Manhattan.  (AC ¶¶ 39–40.)

In late 2016 or early 2017, Geffner informed Defendants Jenkins and Buchanan that his wife was pregnant and that she would be undergoing a C-Section in March 2017.  (AC ¶¶ 44–45.)  Corresponding from his Manhattan office, Geffner told both Jenkins and Buchanan that he would need to take time off in connection with his wife's pregnancy and the C-Section procedure.  (*Id.*)  When the date of the C-Section arrived, Geffner took off work, doing so under the impression that he was on FMLA leave.  (AC ¶ 47.)  But on the day following the procedure, Geffner received an "unbelievable and upsetting" email from Buchanan in which Buchanan told Geffner that he needed to immediately resume working, or, in the alternative, meet with Buchanan to discuss a new employment relationship with Defendants.  (AC ¶ 48.)  Geffner responded with an email detailing his dissatisfaction with Buchanan's email, as well as with the "history of bullying, harassment, [and] discrimination" he had experienced while under Defendants' employ.  (AC ¶ 49.)  Geffner included Defendant Quanta Services, Inc.'s Human Resources ("HR") department on this response.  (*Id.*)

Upon his return to work, Geffner submitted a request to substitute his accrued paid time off for FMLA leave and initiated a formal discrimination complaint. (AC ¶¶ 46, 50.) Defendant Miller, who worked for the Corporate Defendants as HR Director, initiated an investigation into Geffner's allegations. (AC ¶ 51.) Approximately two weeks later, Miller asked Geffner to come to Quanta Services, Inc.'s New Jersey offices for a meeting. (AC ¶ 53.) Geffner requested that the meeting be held instead at a nearby hotel, citing his fears of experiencing a hostile work environment. (*Id.*) Miller agreed to accommodate this request. (*Id.*) At their meeting at the hotel, Miller informed Geffner that his employment with Defendants was being terminated, and she provided Geffner with a formal termination letter. (AC ¶ 56.) Geffner alleges that his termination was discriminatory and stemmed from retaliation for the discrimination complaints and leave requests that Geffner had made. (*See* AC ¶¶ 57–58.)

### B. Procedural Background

Geffner commenced this action by filing an initial complaint on April 27, 2018. (Dkt. No. 1.) After Defendants moved to dismiss the initial complaint for improper venue and for insufficient process and for improper service of process on Defendant Austin, who was misnamed in the initial complaint (Dkt. No. 27; Dkt. No. 28 at 9–10), Geffner filed the operative Amended Complaint on June 14, 2018 (Dkt. No. 33). On July 5, 2018, Defendants filed the instant motion to dismiss Geffner's Amended Complaint. (Dkt. No. 46.) Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) to dismiss Geffner's Amended Complaint in its entirety for improper venue, and they move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Geffner's claims against Defendant Austin for failure to state a claim. (*Id.*)

4

## II. Venue

Defendants move pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) to dismiss Geffner's Amended Complaint for improper venue. (Dkt. No. 46; Dkt. No. 47 at 1.)

### A. Legal Standard

Under 28 U.S.C. § 1406(a), a district court shall dismiss (or, in some circumstances, transfer) "a case laying venue in the wrong division or district." Rule 12(b)(3) provides the mechanism by which a party can ask a court to do so. "On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *Cartier v. Micha, Inc.*, No. 06 Civ. 4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). Where a court declines to hold an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of [venue]." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (alteration in original) (quoting *CutCo Indus. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986)). "In analyzing whether the plaintiff has met this burden, courts must 'view all the facts in a light most favorable to plaintiff.'" *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17 Civ. 1725, 2018 WL 1478047, at *2 (S.D.N.Y. Mar. 26, 2018) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)).

### B. Discussion

28 U.S.C. § 1391(b), which governs choice of venue for civil actions filed in the federal district courts, provides that such an action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* According to Geffner, venue lies in this District based on the statute's second prong, because "the events giving rise to this action arose in New York County, within the Southern District of New York." (AC ¶ 8; s*ee also* Dkt. No. 51 at 2–6.)

When evaluating assertions of venue grounded in Section 1391(b)(2), the Second Circuit has instructed "district courts to take seriously the adjective 'substantial'" and "to construe the venue statute strictly." *Gulf Ins. Co.*, 417 F.3d at 357. Accordingly, "*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Id.* (emphases in original). Still, "Section 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred. Rather, . . . [Section] 1391(b)(2) . . . permits venue in multiple judicial districts as long as a 'substantial part' of the underlying events took place in those districts." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005) (cleaned up).

The Second Circuit has directed district courts to undertake a two-part inquiry when confronting Section 1391(b)(2) assertions of venue. "First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claim[s] . . . have occurred in the district in question.'" *Id.* (alterations in original) (citation omitted) (quoting *Gulf Ins. Co.,* 417 F.3d at 357). The question of substantiality involves "a qualitative [rather] than a quantitative inquiry," and can be answered only "by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* at 432–33.

The Court concludes that Geffner's Amended Complaint alleges facts sufficient to make a *prima facie* showing of venue in this District. As it must, the Court begins by identifying the "nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims." *Id.* at 432. Here, all of Geffner's employment discrimination claims arise in connection with his work for the Defendants, 99% of which he alleges was performed in his Manhattan office within this District. (AC ¶ 22.) The other acts giving rise to Geffner's claims are Defendants' allegedly discriminatory behaviors. These acts include: Defendant DeSena's discriminatory comments made directly to Geffner, the majority of which occurred outside this District in Deer Park, New York (*see, e.g.*, AC ¶¶ 25–31, 33); Defendants' demands that Geffner work (principally out of his Manhattan office) on Jewish holidays despite prior requests for leave that Geffner had made from his Manhattan office (AC ¶¶ 39–40); Defendants' demand that Geffner perform his employment duties while he was away from work in connection with his wife's pregnancy, which followed on the heels of Geffner's requests for FMLA leave issued from his Manhattan office (AC ¶¶ 44–45); and Defendants' ultimate termination of Geffner during a meeting in New Jersey allegedly in retaliation for his initiation of an HR complaint, in connection with which Defendants directed correspondence to Geffner at his Manhattan office (AC ¶¶ 50–56).

Having taken stock of the conduct giving rise to Geffner's claims, the Court now asks whether the portions of that conduct that occurred within this District amount to a "substantial part of those acts or omissions" sufficient to satisfy Section 1391(b)(2). *Daniel*, 428 F.3d at 432. The Court concludes that they do. Perhaps most importantly, nearly all of Geffner's work for Defendants was performed within this District. (*See* AC ¶ 22.) Consequently, two of the central injuries he alleges to have suffered in connection with Defendants' conduct, namely (1) his being forced to perform work in a hostile work environment and (2) his being forced to work despite

his requests for religious and family leave, also occurred here. (*See, e.g.*, AC ¶¶ 39–41, 52.) Precedents from this Circuit make "clear that in some cases, the fact that the Plaintiff suffers harm in a particular judicial district is sufficient to satisfy [Section] 1391(b)(2)." *See Kirk v. N.Y. State Dep't of Educ.*, No. 8 Civ. 6016, 2008 WL 819632, at *4 (W.D.N.Y. Mar. 25, 2008) (collecting cases). That Geffner's claims of injury allege the disruption of a working relationship that he conducted almost exclusively from this District is a strong indicator that those claims are properly brought here.

The Court is also able to identify a substantial portion of Defendants' alleged conduct material to this suit that was either performed in or directed to this District. For example, certain Defendants went to meet Geffner in his Manhattan office when they offered him a full-time employment position. (AC ¶¶ 35–36.) Certain Defendants also directed communications to Geffner's Manhattan office in which they demanded that he work on Jewish holidays and denied his eligibility for FMLA and ADA leave. (AC ¶¶ 39–40, 54.) The Second Circuit has upheld venue in districts in which plaintiffs receive correspondences giving rise to their claims, even when those correspondences were directed to them by Defendants from outside that district. *See, e.g.*, *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 153 (2d Cir. 2001) ("That many of [defendant's] communications reached [plaintiff's] offices in New York through the Connecticut brokers does not alter the fact that [defendant] directed communications to New York. Accordingly, venue in the Southern District of New York was proper."); *Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2d Cir. 1992) ("[Location of plaintiff's] receipt of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act."). So too here, Defendants' directing to this District a substantial

portion of the correspondences giving rise to Geffner's claims further bolsters the propriety of laying venue in this District.

To be sure, venue might also lie in the District of New Jersey, the district in which Geffner and a number of the Defendants reside and the District in which he received his ultimate notice of termination. (AC ¶¶ 10, 55.) But Section 1391(b)(2) "'contemplates that venue can be appropriate in more than one district' and 'permits venue in multiple judicial districts as long as a "substantial part" of the underlying events took place in those districts.'" *Daniel*, 428 F.3d at 432 (quoting *Gulf Ins. Co.*, 417 F.3d at 356). Accordingly, in deciding Defendants' motion to dismiss, the Court's task is not to determine whether venue for this action might also lie elsewhere, but rather to assess whether Geffner has adequately alleged that "*significant* events or omissions *material* to [his] claim[s] . . . have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co.*, 417 F.3d at 357 (emphasis in original). Because Geffner has done so, Defendants' Rule 12(b)(3) motion to dismiss is denied.

## III. Failure to State a Claim

Defendants move pursuant to Rule 12(b)(6) to dismiss Geffner's claims against Defendant Austin for failure to state a claim. (Dkt. No. 46; Dkt. No. 47 at 10–13.)

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim, a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff pleads facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "The Court must accept as true all well-pleaded factual allegations in the complaint, and draw [ ] all inferences in

9

the plaintiff's favor." *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (alteration in original) (internal quotation marks omitted).

B. **Discussion**

Geffner does not allege that Austin himself performed or was directly involved in any of the conduct at issue in this suit. Instead, the only factual allegations in the Amended Complaint regarding Defendant Austin consist of the following:

> At all times material, Defendant EARL C. AUSTIN, JR., (hereinafter referred to as "AUSTIN"), was and is the president, CEO, COO and Director of Defendants Phoenix Power Group, INC. [sic] and Quanta Services, Inc., and had supervisory authority over Plaintiff with regard to his employment.

(AC ¶ 20.) Based on these allegations, Geffner brings claims against Austin under the following statutory provisions: 42 U.S.C. § 1981 (AC ¶¶ 72–79); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 (AC ¶¶ 94–103); and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 (AC ¶¶ 104–19).

Geffner fails to state a claim under Section 1981. "Under § 1981, personal liability of a defendant may not be predicated solely on a position of seniority." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009). Instead, "individuals may be liable under Section 1981 [only] if they were personally involved in [the alleged] discrimination." *Philip v. GTECH Corp.*, No. 14 Civ. 9261, 2016 WL 3959729, at *12 (S.D.N.Y. July 20, 2016); *see also Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (dismissing Section 1981 claim where plaintiff failed to "allege that [individual defendants] had any personal involvement in" unlawful conduct). Accordingly, Geffner's Section 1981 claim against Austin is dismissed.

Geffner also fails to state a claim against Austin under the NYSHRL. It is true that the New York Court of Appeals has suggested that an individual defendant may be liable as an "employer" under the NYSHRL if the individual is "shown to have any ownership interest [in

the offending entity] or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542 (1984) (per curiam). But such an "employer is never strictly liable for the conduct of employees, even if the harassing employee is a Plaintiff's supervisor." *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 307 (S.D.N.Y. 2015) (citing *Human Rights ex rel. Greene v. St. Elizabeth's Hosp.,* 66 N.Y.2d 684, 687 (1985)). Rather, to state a claim against Austin as an individual employer under the NYSHRL, Geffner would need to have alleged facts sufficient to establish that Austin not only qualifies as one of Geffner's "employers," but also that he had "encouraged, condoned, or expressly or impliedly approved" the discriminatory conduct at issue in this case. *See id.* Because Geffner has not done so, his NYSHRL claims against Austin must be dismissed as well.

Finally, Geffner's NYCHRL claims against Austin meet a similar fate. While the New York Court of Appeals has interpreted the NYCHRL as subjecting *corporate* employers to strict liability for the conduct of their managerial employees, *see Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 480–81 (2010), courts in this District have reasoned that "the [NYCHRL] is not so broad that it imposes strict liability on an *individual* for simply holding an ownership stake in a liable employer." *Marchuk*, 100 F. Supp. 3d at 308 (emphasis added). Instead, "when courts permit cases to proceed against individuals under the NYCHRL, it is because 'they participate in the conduct giving rise to a discrimination claim.'" *Id.* (quoting *Feingold v. New York,* 366 F.3d 138, 158 (2d Cir. 2004)). The individual defendant's level of participation need not have been major, as courts permit individual liability in cases involving only "some minimal culpability" on the part of the individual, such as a "supervisor's failure to take adequate remedial measures." *Id.* at 309 (second quoting *Lewis v. Triborough Bridge and Tunnel Auth.,* 77 F. Supp. 2d 376,

11

384 (S.D.N.Y. 1999)). But here, because Geffner makes no allegations at all regarding Austin's individual culpability, he has failed to state a claim against Austin under the NYCHRL.

Accordingly, all of Geffner's claims against Defendant Austin are dismissed for failure to state a claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for improper venue is DENIED. Defendants' motion to dismiss the claims against Defendant Austin is GRANTED. The remaining Defendants shall answer the Amended Complaint within 14 days of the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 46.

SO ORDERED.

Dated: December 27, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge